**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**KIMBERLY FOUST,**

      **Plaintiff,**

  v.                                     **Civil Action 2:20-cv-616
                                          Magistrate Judge Jolson**

**COMMISSIONER OF SOCIAL
SECURITY,**

      **Defendant.**

**OPINION AND ORDER**

Plaintiff, Kimberly Foust, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). The parties in this matter consented to the Undersigned pursuant to 28 U.S.C. § 636(c). (Docs. 5, 6). For the reasons that follow, Plaintiff's Statement of Errors is **OVERRULED**, and judgment is entered in favor of Defendant.

**I. BACKGROUND**

Plaintiff protectively filed her application for DIB on July 15, 2016, alleging that she was disabled beginning October 30, 2013.[1] (Tr. 176–77). After her application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a video hearing on August 10, 2018. (Tr. 28–51). On January 4, 2019, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 12–27). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6).

---

[1] Plaintiff's application for DIB lists October 1, 2013, as her onset date of disability, but her Disability Report list October 30, 2013. (*See* Tr. 214).

Plaintiff filed this action on February 4, 2020 (Doc. 1), and the Commissioner filed the administrative record on April 6, 2020 (Doc. 7).  Plaintiff filed a Statement of Specific Errors on May 21, 2020 (Doc. 8), and the Commissioner responded on June 16, 2020 (Doc. 9).  No reply was filed.

### A. Relevant Medical Background and Hearing Testimony

Because Plaintiff's statement of errors pertains to only her physical impairments, the Court will limit the discussion of the medical record and the hearing testimony to the same.

1. *Relevant Medical History*

The ALJ helpfully summarized the relevant medical records in this case:

> [ ] Turning to the objective evidence, the claimant has severe Epstein-Barr virus with chronic pain and fatigue, and headaches (Record). The claimant reported a history of Epstein-Barr virus since high school (SF, 6F, Record). In 2015, the claimant underwent blood work that showed the claimant had active Epstein-Barr virus (3F/20, 3F/19). Epstein-Barr virus is known to cause achy pain and fatigue. The claimant testified that her symptoms are similar to the flu (Testimony). The claimant testified she stopped working as an EMT because she had difficulty lifting and caring for patients in that capacity (Testimony). The claimant alleged she has chronic fatigue on a constant basis (Testimony). However, the treatment notes indicate that the claimant often denied fatigue and body aches (1F/9, 1F/11, 1F/21, 1F/26, 1F/28, 1F/39, 3F/18, 4F/43, versus 1F/23, 1F/26, 3F/45). The objective treatment notes indicate[] that while the claimant has chronic fatigue, the symptoms are intermittent in nature based on the frequency that the claimant denies fatigue to her providers. In December 2016, the claimant presented for an evaluation of fatigue, and at that appointment, the claimant denied fatigue (3F/34). The objective examination revealed that the claimant maintained "grossly normal" range of motion and "grossly normal" cognitive exam with intact reflexes (3F/34). The claimant's provider indicated that the claimant's fatigue is a multisomatoform illness with no evidence of progressive physical disease and explained to the claimant that Epstein-Barr virus has "nothing to do with these symptoms and that her [lab work] will be positive for the rest of her life" and should not be rechecked (3F/34). The claimant also reported chronic neck and low back pain (6F, Testimony). The claimant treated her reported mild to moderate back pain with a chiropractor, a non-acceptable medical source (7F, 7F/29, 2F, SSR 06-03p). Despite the claimant reporting moderate tenderness, the claimant maintains intact sensation, full 5/5 muscle strength, and normal fine motor coordination (6F/2). Other physical examinations of record indicate that the claimant has normal gait

2

> and normal muscle strength in all extremities (8F/29, 3F/19, 3F/34, 3F/46, 1F/28, 1F/33, 6F/2). Moreover, on objective examination, the claimant was negative for weakness (4F/43). In 2016, the claimant had moderate tenderness in her neck, however, in 2018, the claimant had full range of motion in her neck without tenderness (7F/3 versus 8F/18, 8F/28). The claimant reported having headaches three times per week, but she only requires Ibuprofen for treatment (Testimony). Moreover, despite the claimant's reports of headache, the objective evidence indicates that she maintains normal attention, concentration, and memory (Record). Moreover, examinations reveal a non-tender head with full orientation and normal neurological findings (1F/5, 6F/2, Record).

(Tr. 21).

### 2. *Relevant Hearing Testimony*

The ALJ likewise summarized Plaintiff's statements and the testimony from Plaintiff's hearing:

> The claimant alleged that due to back pain and fatigue she became unable to lift patients while working as an EMT, or sit for prolonged periods (4E). The claimant alleged she has "mental fogginess" that caused her difficulty in providing care for patients (4E). However, the claimant alleged she can drive and shop online, and that shopping online is her hobby (4E). The claimant alleged difficulty lifting, squatting, bending, standing, walking, sitting, and kneeling (4E/6). The claimant alleged she cannot lift more than 15 pounds or engage in prolonged standing (4E/6). The claimant alleged she is left-hand dominant (4E). The claimant testified she has difficulty lifting due to increased fatigue (Testimony). The claimant testified she can sit for 30 minutes at one time (Testimony). The claimant testified she can lift about 20 pounds, which is how much her grandson weights (Testimony). The claimant testified she can walk 15 minutes (Testimony). The claimant testified she has headaches three times per week and uses Ibuprofen (Testimony).

(Tr. 20).

### B. The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirement through December 31, 2017, and had not engaged in substantial gainful employment during the period from her alleged onset date of October 30, 2013 through her date last insured of December 31, 2017. (Tr. 17). The ALJ found that Plaintiff had the following severe impairments: Epstein-Barr virus with chronic

3

pain and fatigue, and headaches. (*Id.*). The ALJ held, however, that through the date last insured, none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 19).

As for Plaintiff's RFC, the ALJ found:

[T]hrough the date insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [she] can lift 20 pounds occasionally and 10 pounds frequently; occasionally climb ladders, ropes, and scaffolds; occasionally stoop and crouch; frequently crawl; avoid exposure to temperatures extremes of cold and heat; and avoid concentrated humidity.

(Tr. 19–20). She found "that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 20).

As for the relevant opinion evidence, the ALJ determined:

On October 17, 2016, and December 9, 2016, State Agency physicians, Dr. Lewis and Dr. Cruz, reviewed the claimant's file and objective record (1A, 3A). State agency medical and psychological consultants are highly qualified physicians who are experts in the evaluation of the medical issues in disability claims under the Act (SSR 17-2p). Dr. Lewis concluded that the claimant can perform activities consistent with medium work, with additional limitations. Dr. Cruz concluded the claimant can perform activities consistent with light work, with additional limitations. Dr. Lewis's findings are somewhat inconsistent with the objective evidence Dr. Cruz's findings are most consistent with the overall objective evidence, including more recent findings. Therefore, Dr. Lewis's opinion is afforded little weight, and Dr. Cruz' opinion is afforded significant weight.

On October 6, 2016, the claimant presented to Dr. Kennington for physical examination (6F). DR. Kennington performed objective physical examination that revealed the claimant had normal gait, full 5/5 strength, normal reflexes, normal sensation, and normal range of motion. Dr. Kennington concluded the

4

> claimant can perform light lifting, carrying, pushing, and pulling, which is mostly consistent with other evidence of record (3A). However, Dr. Kennington also found that the claimant could only sit, stand, and walk for one hour at a time, and speculated that the claimant's pain was related to degenerative disc disease. However, the objective evidence of record does not indicate that the claimant's reports are related to any disease, nor does it indicate that the claimant can only stand, sit, or walk one hour at a time (3F/34, 1F/13). Dr. Kennington's own physical examination findings also do not support such conclusions. Dr. Kennington's findings are also inconsistent with two other physician opinions (1A, 3A). Therefore, Dr. Kennington's opinion is afforded partial weight.

(Tr. 22).

The ALJ next found that "[t]hrough the date last insured, the claimant was capable of performing past relevant work as an (1) administrative clerk (DOT 219.362-010), light, semi-skilled, SVP 4, performed sedentary (Record, Testimony). This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity." (Tr. 22). The ALJ determined that Plaintiff could also perform jobs that exist in significant numbers in the national economy, such as a store cashier, sales attendant, or mail clerk. (Tr. 23). She therefore concluded that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from October 30, 2013, the alleged onset date, through December 31, 2017, the date last insured." (*Id.*).

## II.     STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

5

support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

Plaintiff challenges the ALJ's RFC determination in three ways. To begin, she argues that the RFC should have included specific limitations regarding off-task time and absences due to the chronic pain, fatigue, and headaches caused by her Epstein–Barr virus. (Doc. 8 at 3–4). In support, she primarily relies on her hearing testimony. (*Id.*). The Commissioner responds that such reliance is not enough. (*See generally* Doc. 9).

In any social security case, it is the claimant's burden to prove that she is disabled. 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled."). This includes providing "evidence showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your case." *Id.*

6

Here, the ALJ considered the limitations presented by Plaintiff's Epstein–Barr virus but ultimately found that Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms . . . [were] inconsistent with the overall objective evidence of record." (Tr. 21). It was the ALJ's job to make this credibility determination, and this Court defers to that determination. *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) ("Our role is not to . . . examine the credibility of the claimant's testimony."); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying."). Of note, Plaintiff has not challenged the ALJ's credibility determination.

What is more, the ALJ was correct that no objective medical evidence showed the need for the limitations Plaintiff now seeks. Indeed, no doctor ever opined that Plaintiff would require any sort of off-task time or specified days off work per month. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (affirming ALJ's decision, in part, because "[t]he physicians who treated Ealy for these things never recommended any ongoing significant restrictions"). And the ALJ specifically documented medical records showing that Plaintiff "often denied fatigue and body aches," which undermined her hearing testimony (Tr. 21 (citing Tr. 286, 288, 298, 303, 305, 316, 384, 468)). Given this, the ALJ did not err by not including these specific limitations in the RFC.

Plaintiff additionally argues that in constructing the RFC, the ALJ should have given more weight to the opinion of Rohn Kennington, M.D. (Doc. 8 at 4). More specifically, Plaintiff argues that the ALJ should have incorporated Dr. Kennington's opinion that "[s]itting, standing, and

7

walking would need to be limited to periods of time no more than one hour at a time with adequate periods allowed for rest and change of position in light of her chronic lower back issues." (*Id.* (relying on Tr. 527)).

Dr. Kennington saw Plaintiff one time to determine whether she was disabled. On exam, Plaintiff had normal gait and station, and was able to transfer from sitting to standing, and onto and off the exam table, without difficulty. (Tr. 526). Dr. Kennington documented that Plaintiff had full range of motion in all joints, with only some tenderness to palpation in the spine and knees. (Tr. 526, 529–31). Plaintiff had full strength in all muscle groups, intact manipulative ability, and no muscle spasm. (Tr. 526, 528–29). A sensory exam was normal, deep tendon reflexes were normal, and she had normal fine motor coordination. (Tr. 526). Straight leg raise testing was negative bilaterally in the supine position (*Id.*). In his summary section of the exam, Dr. Kennington wrote that Plaintiff could "still perform light lifting, carrying, pushing, and pulling." (Tr. 527). As noted, Dr. Kennington also wrote: "Sitting, standing, and walking would need to be limited to periods of time no more than one hour at a time with adequate periods allowed for rest and change of position in light of her chronic lower back issues." (*Id.*).

The ALJ gave only "partial weight" to Dr. Kennington's assessment. (Tr. 22). The ALJ explained that Dr. Kennington's conclusion that Plaintiff could perform light exertional work was supported by the evidence, including his own examination notes. (Tr. 22). The ALJ adopted this limitation into the RFC which limited Plaintiff to light work, and also added significant postural and environmental limitations. (Tr. 19–20). But the ALJ rejected Dr. Kennington's conclusion that Plaintiff could only stand, sit, or walk for one hour at a time. (Tr. 22, 527). The ALJ explained, the "the objective evidence of record" did not support this limitation. (Tr. 22). The ALJ's opinion

8

documented instances where the record as a whole showed few, if any, abnormalities. Reliance on other parts of the decision was not error. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (recognizing that the ALJ's analysis may be found throughout the decision); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997) (holding that the ALJ's decision must be read as a whole). Indeed, the ALJ specifically documented that Plaintiff "often denied fatigue and body aches." (Tr. 21 (citing to Tr. 286, 288, 298, 303, 305, 316, 384, 468)). The ALJ also noted that in December 2016, while Plaintiff presented for an evaluation of her fatigue, objective examination revealed "grossly normal" range of motion and "grossly normal" cognitive exam with intact reflexes, and she denied feeling fatigued. (Tr. 21 (citing Tr. 400)). The ALJ specifically discussed the fact that many other physical examinations of record documented normal gait and normal muscle strength in all extremities. (Tr. 21 (citing Tr. 305, 310, 385, 400, 412, 526, 592)). Again, this analysis was appropriate. *See Tyra v. Sec'y of HHS*, 896 F.2d 1024, 1030 (6th Cir. 1990) ("Though claimant's physicians consistently reported Tyra's subjective complaints of pain, he had no underlying neurological abnormalities, atrophy or proportionate loss of sensory and reflex reactions.").

The ALJ also noted that Dr. Kennington's own examination notes did not support his one-hour standing, sitting, and walking limitation either. (Tr. 22). This is so because Dr. Kennington premised this restriction on Plaintiff's back pain, but his own examination findings are devoid of any objective signs of back abnormalities, and so the ALJ reasonably discounted that portion of the opinion. *See Tate v. Comm'r of Soc. Sec.*, 467 F. App'x 431, 433–34 (6th Cir. 2012) (holding that the ALJ properly discounted a treating source's opinion in part because the opinion was based on claimant's subjective complaints without sufficient support from objective findings). As the

9

ALJ noted, "Dr. Kennington's own physical examination findings also do not support th[e]" conclusion that Plaintiff could only stand, sit, or walk for one-hour at a time. (Tr. 22). As noted above, Dr. Kennington documented that Plaintiff had full range of motion in all joints, full strength in all muscle groups, no muscle spasm, full sensation, normal deep tendon reflexes, and negative straight leg raise testing. (*See* Tr. 526–31). *See Crouch v. Sec'y of HHS*, 909 F.2d 852, 856–57 (6th Cir. 1990) (We find that the absence of any significant neurological deficits and atrophy supports the Secretary's conclusion [that Plaintiff was not disabled] . . . ."). Simply put, such unremarkable examination findings do not support Dr. Kennington's limitation. *See Burrell v. Colvin*, No. 3:12-CV-00304, 2013 WL 3835427, at *9 (S.D. Ohio July 24, 2013) (internal citation and quotations omitted) (upholding the ALJ's RFC determination, in part because the "ALJ [] reasonably observed that the office notes of [plaintiff's physicians] revealed no functional limitations whatsoever or any clinical findings in support of their opinions").

     Beyond not having objective record support, the ALJ discounted Dr. Kennington's one-hour stand/walk/sit restriction because Dr. Kennington did not meaningfully explain the basis for the restriction. (Tr. 22 (referring to Tr. 527)). Time and again, courts have made clear that an ALJ can properly reject a medical opinion that lacks any meaningful explanation. *See, e.g.*, *Ilesamni-Woods v. Astrue*, No. 3:09-CV-0479, 2010 WL 5490998, at *8 (S.D. Ohio Nov. 29, 2010) (holding that the ALJ properly rejected treating physician's opinion where doctor "did not explain his disability conclusions in any meaningful detail").

     Although the ALJ gave Dr. Kennington's opinion partial weight, she gave significant weight to the opinion of the state agency reviewing physician, Teresita Cruz, M.D., who reviewed Plaintiff's records on reconsideration, when fashioning the RFC. (Tr. 22, 72–74). As a reviewing

physician, Dr. Cruz was familiar with the Social Security Administration's disability programs and is an expert in the field of disability evaluation. *See* 20 C.F.R. § 404.1527(e)(2)(i) ("Program physicians, psychologists, and other medical specialists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation."). As the ALJ noted, the state agency reviewers are "highly qualified physicians who are experts in the evaluation of the medical issues in disability claims under the Act." (Tr. 22 (citing SSR 17-2p)). In other words, Dr. Cruz has knowledge and experience evaluating Social Security disability cases and possesses specific understanding of both the disability programs and their evidentiary requirements. *See* SSR 96-6P, 1996 WL 374180 (S.S.A. July 2, 1996). In addition to being disability experts, the state agency reviewing physicians are also known as neutral sources. *See Lucido v. Barnhart*, 121 F. App'x 619, 622 (6th Cir. 2005) ("[T]he reviewing physicians . . . have the strongest claims to neutrality.").

The ALJ adopted many of the opinions of Dr. Cruz's limitations and then added more restrictions to the RFC to account for later medical evidence. (Tr. 19–20, 22). *See McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) ("It is clear from the ALJ's decision, however, that he considered the medical examinations that occurred after [the state agency physician's] assessment . . . and took into account any relevant changes in McGrew's condition."). Accordingly, while Dr. Cruz opined Plaintiff could perform medium exertional work, including lifting/carrying 50 pounds occasionally and 25 pounds frequently, the ALJ reduced this to light exertional work, which includes a lift/carry maximum of 20 pounds occasionally and 10 pounds frequently. (Tr. 19–20, 22; *see also* Tr. 72–74). The ALJ adopted Dr. Cruz's opinion that Plaintiff could frequently crawl, but increased the postural restrictions for stooping, crouching, and

11

climbing ladders, ropes, and scaffolds to an occasional basis rather than frequent.  (Tr. 19–20, 22, 72–74). Finally, to account for her complaints of headache and asthma, the ALJ added environmental restrictions including that she avoid exposure to temperature extremes of cold and heat, and avoid concentrated humidity.  (Tr. 19–20, 22 (relying on Tr. 72–74)).  These significant additional limitations show that the ALJ subjected the assessment of the reviewing physician to proper scrutiny.  *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016) (finding that the ALJ subjected a non-examining opinion "to at least some scrutiny" where "the ALJ ... applied even greater restrictions in this area than [the non-examining doctor] opined were appropriate").

Consequently, Plaintiff's argument regarding Dr. Kennington's opinion is that she wanted the ALJ to weigh the medical opinions differently, "which is clearly not a basis for . . . setting aside the ALJ's factual findings." *Mullins v. Sec'y of HHS*, 836 F.2d 980, 984 (6th Cir. 1987).  It is the Commissioner's function to resolve conflicts in the medical evidence.  *Hardaway v. Sec'y of HHS*, 823 F.2d 922, 928 (6th Cir. 1987).  The Commissioner's determination must stand if it is supported by substantial evidence regardless of whether the reviewing court would resolve conflicts in the evidence differently.  *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  The Sixth Circuit "'has consistently stated that the [Commissioner] is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence.'"  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (en banc) (quoting *Bogle*, 998 F.2d at 347–48).  The ALJ properly weighed the medical evidence here.

Finally, Plaintiff argues that a hypothetical question, which included off-task time and absences, should have been posed to the VE. (Doc. 8 at 5). But this argument fails for the same reasons Plaintiff's other RFC arguments failed. "It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993). In short, the hypothetical posed matched the ALJ's acceptable read of the record, and there was no error.

In sum, the ALJ alone is responsible for determining a plaintiff's residual functional capacity. *See* 20 C.F.R. § 404.1546(c). While medical source opinions are considered, the final responsibility for deciding the RFC is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x. 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC."). The ALJ followed the applicable regulations, and substantial evidence supports her decision.

## IV. CONCLUSION

For the reasons stated, Plaintiff's Statement of Errors is **OVERRULED**, and judgment is entered in favor of Defendant.

IT IS SO ORDERED.

Date: July 31, 2020     /s/ Kimberly A. Jolson
                        KIMBERLY A. JOLSON
                        UNITED STATES MAGISTRATE JUDGE

13